**MASSA v. CINCINNATI (City) et.**

Common Pleas Court, Hamilton County.

No. 134831.   Decided February 20, 1953.

William Jerome Kuertz, Cincinnati, for plaintiff.

Henry M. Bruestle, City Sol., James W. Farrell, Jr., Asst. City Sol., Edward F. Alexander, Sp. Counsel, Cincinnati, for defendants.

## OPINION

By BELL, J.

In the interest of brevity the plaintiff will be designated the taxpayer; the defendant the City of Cincinnati the city; defendant Wilbur R. Kellogg the Manager, and defendant R. G. Sarvis the Director.

At the outset it should be stated that the pleadings contain numerous allegations as to relative costs of doing the work by contract or by force account. The question here presented is one of power, and not one of cost. If the defendant city has the power to proceed as proposed, then the court cannot be interested in any question of cost. Where a municipality has the power to proceed in more than one way, the city officials have discretion to determine in what way the municipality will proceed, and a court is not invested with authority to interfere with that discretion in the absence of fraud, bad faith, or a gross abuse of discretion. No such claim is advanced in the instant case—hence the court did not permit evidence upon the subject of whether one method would be more or less costly than the other method.

The legal questions for determination may be stated thus:

(1) Does the method of procedure adopted and followed for many years by the city in repairing and resurfacing public streets violate any provision of the Constitution, or of any controlling provision of the statute law of Ohio?

(2) Does the decision in the case of **Sanzere v. City of Cincinnati, 157 Oh St 515, 106 N. E. 2d 286, 287,** make neces-

sary the application of the doctrine of **res judicata** to the issue presented in the instant case?

These questions will be disposed of in their inverse order. If the doctrine of **res judicata** applies, that makes an end of plaintiff's case.

A definition of the rule (res judicata) may be stated thus: The judgment of a court of competent jurisdiction directly upon a point, as a plea in bar or as evidence, is conclusive between the same parties or their privies on the same matter, directly in question in another court; but neither the judgment of a court of concurrent or exclusive jurisdiction is evidence of any matter incidentally cognizable, nor any matter to be inferred by argument from the judgment. The doctrine inheres as an obvious rule of expediency, public policy and natural justice to prevent a multiplicity of actions.

It is a matter of grave doubt whether the doctrine has any application to a class suit, but a determination of that question is unnecessary here. Assuming, without deciding, that the doctrine may be applied to a class suit, the court will examine the issues in the Sanzere case and the issues in the instant case, and determine whether the point decided in the Sanzere case is in anywise involved here.

In the Sanzere case the only question raised or decided was stated thus:

"Is the last sentence of §4678-2 GC, which reads, 'This act shall not apply to any city or village having a charter form of government,' unconstitutional because it does not comply with **Section 26, Article II of the Constitution** reading 'All laws, of a general nature, shall have a uniform operation throughout the state * * *'?"

The statutes there in question, §§4678-1 and 4678-2 GC, as enacted by the General Assembly, by their terms had no application to any charter municipality, but it was contended that the last sentence of the §4678-2 GC, was unconstitutional as being repugnant to **Section 26, Article II of the Ohio Constitution.** While it is true that those sections had to do with street improvements in other than charter municipalities, it is obvious that the judgment which held that the sections were constitutional and had no application to a charter municipality is not the same issue as here presented. The city's second defense therefore cannot prevail.

The second question for consideration is, "Does the method of procedure adopted and followed for many years by the city in repairing and resurfacing public streets violate any provision of the Constitution, or any controlling provision of the statute law of Ohio?"

Prior to 1912 municipal corporations in this state derived their powers from the General Assembly, and had only such powers as were thus granted. In 1912 the people of Ohio made a new and different distribution of power. Since that time municipalities derive their powers from the Constitution and not from the General Assembly.

**Article XVIII.**

"**Section 3.** (Powers) **Municipalities shall have authority to exercise all powers of local self-government** and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." (Emphasis added.)

"**Section 7.** (Home rule) Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Section 3 of Article XVIII has been before the Supreme Court in many cases. Some of those cases involved the question of whether certain matters were of purely local concern, or whether they were matters of state-wide concern. See **State ex rel. Ramey v. Davis, 119 Oh St 596, 165 N. E. 298; State ex rel. Mowrer v. Underwood, 137 Oh St 1, 27 N. E. 2d 773; State ex rel. Strain v. Houston, 138 Oh St 203, 34 N. E. 2d 219; City of Cincinnati v. Gamble, 138 Oh St 220, 34 N. E. 2d 226; State ex rel Arey v. Sherrill, 142 Oh St 574, 53 N. E. 2d 501; City of Akron v. Zeisloft, 22 Ohio N. P., N. S., 533.**

Those cases, and others which might be cited, are authority for the proposition that if the matter under consideration is of state-wide concern, then the enactments of the General Assembly control and any action of the municipal council inconsistent therewith must yield. On the other hand, if the matter under consideration is one of purely local concern, then the acts of the municipal council control and any enactment of the General Assembly inconsistent with the acts of the municipal council must yield.

Is the repair or resurfacing of streets within a municipality a matter of state-wide concern, or is it a matter of purely local concern?

In the case of **Village of Perrysburg v. Ridgway, 108 Oh St 245, 140 N. E. 595,** the Supreme Court squarely decided that matters with regard to streets were of purely local concern. Paragraph 2 of the syllabus in that case reads as follows:

"2. The power to establish, open, improve, maintain, and repair public streets within the municipality, and fully control the use of them, is included within the term 'powers of local self-government.' "

That paragraph of the syllabus has never been disapproved or overruled by the Supreme Court.

The Perrysburg case would be decisive of the present controversy except for the fact that by the provisions of Article II, Section 1 of the City Charter, §§4328, 4329 and 4331 GC here in question have the force and effect of ordinances of the city.

Article II, Section 1 of the Charter of the City of Cincinnati reads as follows:

"Article II. Legislative Power.

"Section 1. All legislative powers of the city shall be vested, subject to the terms of this charter and of the constitution of the state of Ohio, in the council. The laws of the state of Ohio not inconsistent with this charter, except those declared inoperative by ordinance of the council, shall have the force and effect of ordinances of the city of Cincinnati; but in the event of conflict between any such law and any municipal ordinance or resolution the provisions of the ordinance or resolution shall prevail and control."

This record fails to disclose that council has by ordinance declared any provision of the statute law here in question to be inoperative.

The resolution of council marked by the parties as Exhibit 1, attached to the Agreed Statement of Facts (Ex. 1) is not set forth with sufficient clarity to determine whether the provisions of such resolution are inconsistent with the statutory provisions, thus bringing into consideration the following language found in Article II, Section 1 of the charter:

"* * * but in the event of a conflict between any such law and any municipal ordinance or **resolution** the provisions of the ordinance or **resolution** shall prevail and control." (Emphasis added.)

That being the state of the record, consideration will be given to determine whether any provision of §§4328, 4329 or 4331 GC has been violated.

It is also contended by plaintiff that the method adopted violates **Article XVIII, Section 13 of the Constitution** which reads as follows:

"**Section 13.** (Taxation, debts, reports and accounts.) Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such form as may be provided by law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities."

This section of the Constitution has been construed by the Supreme Court in State ex rel. City of Toledo v. Weiler, 101 Oh St 123, 128 N. E. 88. It was there held:

"Section 3. Each municipality assumes responsibility consonant with the authority conferred, and is not only permitted, but required, to determine for itself the portion of its taxing and debt incurring power which shall be used for any authorized municipal purpose, within such constitutional and legislative limitation."

Judge Matthias, writing for the Court, 101 Oh St at page 130, 128 N. E. at page 90, said:

"It (the General Assembly) may limit the levies of taxes and the extent of bonded indebtedness for local purposes, but it may not, either by action or inaction, preclude the exercise of power expressly conferred by the Constitution, or deny the use of its revenues from taxation or its general credit for any purpose * * * within the powers of local self-government thereby conferred. It was not contemplated that any grant of power by the legislature was essential, nor that it should be permitted to deny or limit the purpose, but only prescribe the limitation of taxation and bonded indebtedness for all local purposes."

That decision makes it abundantly clear that Section 13 of Article XVIII of the Constitution has not been violated.

Plaintiff further contends that the method in use is illegal for the reason that two of the streets which the city proposes to resurface are state highways, and that the city, under the proposed method, cannot be granted state aid. Application for, or failure to apply for state aid in the improvement of a state highway within municipal limits is a matter confided to the municipal authorities, and in the absence of fraud or bad faith, is not a justiciable question.

The city contends that §§3629 and 3714 GC, grant the power to proceed in the manner adopted. Sec. 3629 GC, grants power to municipalities to improve and keep in repair streets within the municipality. Sec. 3714 GC, makes it the duty of each municipality to keep its streets open, in repair and free from nuisance. Both these sections are silent as to the method of performance; hence, neither section is helpful in the solution of the present controversy.

Having concluded that the repair and resurfacing of streets is a matter of purely local concern; that each municipality has the power under Article XVIII of the Constitution to proceed in any manner adopted by the municipal authorities, and having further concluded that by virtue of Article II, Section 1 of the Charter adopted by the city §§4328, 4329 and

**4331 GC** have, in the instant case, the force and effect of ordinances of said city; and having further concluded that **Section 13 of Article XVIII of the Constitution** has not been violated, comes now the final and determinative question in this case: Has the city by its method of resurfacing violated the provisions of §§4328, 4329 and 4331 GC?

Sec. 4328 GC reads as follows:

"Contracts made by director of public service; competitive bidding.

"The director of public service may make any contract or purchase supplies or material or provide labor for any work under the supervision of that department not involving more than one thousand dollars. When an expenditure within the department, other than the compensation of persons employed therein, exceeds one thosuand dollars, such expenditure shall first be authorized and directed by ordinance of council. When so authorized and directed, the director of public service shall make a written contract with the lowest and best bidder after advertisement for not less than two nor more than four consecutive weeks in a newspaper of general circulation within the city."

This section has been upon the statute books for many years. Its purpose is to prevent fraud or collusion and to ensure that the municipality will receive full value in return for any expenditure of money in excess of one thousand dollars.

The first sentence of the section grants authority to the director to perform four separate and distinct acts: (1) to make any contract in connection with his department; (2) to purchase supplies: (3) to purchase materials; and (4) to provide labor for any work. Those things he may do without any action of counsel provided that the amount involved does not exceed one thousand dollars.

The next and last sentence provides the procedure when the expenditure exceeds one thousand dollars. In that sentence it is specifically provided:

"When an expenditure within the department, **other than the compensation of persons employed therein,** exceeds one thousand dollars, such expenditure shall first be authorized and directed by ordinance of council. * * *"

In the instant case the expenditure was authorized by council and the materials necessary to be used were purchased after advertisement and receipt of competitive bids. The materials were and are being applied by persons employed within the department.

The court fails to find in that section any prohibition against the municipality performing any municipal function by its

own employees. In fact, the section clearly recognizes the right of the municipality to perform work 'and labor for any ■ municipal operation by regular municipal employees when it provides: "**other than the compensation of persons employed therein.**"

It is agreed that the work on the streets is being performed by regular employees of the city (paragraph 2, item (2), Agreed Statement of Facts).

**Sec. 4329 GC** provides for the proceedings on opening bids, and §4331 GC provides the procedure where there are alterations or modifications of a contract.

None of the sections here in question, either by express language or by clear implication, prohibits any municipality from performing the work and labor involved in any municipal function. Attention could be called to many municipal functions wherein the cost of the equipment or materials used therein exceeds one thousand dollars, and the equipment is used or the materials applied by regular employees of the city (operation of the police and fire departments, collection and disposal of garbage, operation of a workhouse, a city hospital, etc.).

In the view of the court no provision of the Constitution nor of the statutes relied upon by the plaintiff has been violated in the method of procedure adopted and in use by the city.

It follows that the plaintiff is not entitled to the relief prayed for, and that the petition should be dismissed.