RICHARD WARSOCKI, IN PERSON AND FOR ALL PERSONS SIMILARY SITUATED, APPELLANT, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

510 N.W.2d 446

Filed June 15, 1993.   No. A-91-1042.

Ronald L. Brown, of Brown & Tripp, Attorneys, P.C., for appellant.

Kent N. Whinnery, Deputy City Attorney, for appellees City of Omaha and the City of Omaha Police and Firemen's Retirement System.

CONNOLLY, HANNON, and MILLER-LERMAN, Judges.

MILLER-LERMAN, Judge.

Richard Warsocki appeals the dismissal of his petition by the district court for Douglas County. In its order, the court found that Warsocki and all persons similarly situated do not have a vested interest in their disability pension prior to retirement and that the city ordinance which allows the City of Omaha (City) to credit a percentage of pension payments against a subsequent workers' compensation award is not an unconstitutional impairment of a contractual obligation between the parties. For the reasons recited below, we affirm.

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992). See, also, *Hanson v. General Motors Corp.*, 241 Neb. 81, 486 N.W.2d 223 (1992).

## FACTS

Warsocki filed a class action, which was certified by the trial court on December 14, 1990. The scope of the class included "every former uniformed member of the police and fire divisions of the Public Safety Department of the City of Omaha receiving service - connected disability pension and concurrent workers' compensation benefits on and after June 21, 1983." The State of Nebraska's participation in the case was limited to

acceptance of service pursuant to Neb. Rev. Stat. § 25-21,159 (Reissue 1989). The City and City of Omaha Police and Firemen's Retirement System (COPFRS) were represented at trial and on appeal by the City Attorney's office.

The parties agree that Warsocki was employed by the City as a firefighter before June 21, 1983, and that he was injured on the job on January 28, 1984. The parties stipulated at trial that Warsocki had been granted a service-connected disability pension by COPFRS in the amount of $1,575.78 per month effective February 20, 1985. Subsequently, Warsocki filed a claim for workers' compensation benefits. On April 24, 1990, the compensation court awarded Warsocki $200 per week for $55^3/_7$ weeks for temporary total disability compensation and thereafter, and in addition thereto, $184.23 per week for $244^4/_7$ weeks for a 50-percent permanent loss of earning power. COPFRS then claimed a credit due for overpayment of past service-connected disability pension payments to Warsocki pursuant to Omaha Mun. Code, ch. 22, art. III, § 22-89, in the amount of $24,330.99, or essentially, the City's proportional contribution to COPFRS. The district court, in a bench trial, found for the City and dismissed the petition. Warsocki appeals.

## ANALYSIS

On appeal, Warsocki claims that he is entitled to disability pension benefits without reduction regardless of whether or not he receives concurrent workers' compensation relief for the same service-connected disability. Warsocki argues that public pensions are deferred compensation and that payment is enforceable pursuant to a contractual understanding between the employee and the City. Warsocki and several other employees of the City submitted affidavits at trial stating that it was their understanding, prior to enactment of § 22-89, that they would receive a service-connected disability pension if they suffered a work-related injury. The employees stated that the provision for this disability pension benefit, along with other benefits, was an important inducement to continued employment and was considered to be deferred compensation. Warsocki claims he was unaware of § 22-89, which reduces the

pension benefit by the City's proportionate contribution to the pension system if the employee is also receiving workers' compensation benefits. Warsocki claims that, in any event, § 22-89 is unenforceable against employees hired before June 21, 1983, because it is an impermissible impairment of contract. See Neb. Const. art. I, § 16.

In response, the City argues generally that § 22-89 was not a change unfavorable to the employees and that, in any event, Warsocki's pension benefits had not vested when § 22-89 was adopted. As noted by the City, prior to 1983, employees like Warsocki were subject to the Omaha home rule charter and associated city ordinances under which employees receiving both service-connected disability pension and workers' compensation benefits for the same disability had their pensions reduced by the total workers' compensation benefits received and, therefore, would receive only the greater of the two benefits resulting from either workers' compensation or the pension, but not both. The City argues that since 1957, under these provisions, the employee would receive a 100-percent setoff of benefits, whereas after 1983, pursuant to § 22-89, benefits would only be reduced by the proportionate share of the City's contribution which, according to the record, is 54 percent.

Article VII-A, § 6, of the 1957 Omaha home rule charter provided in part:

In event that any member or person, receiving a pension or eligible to receive a pension under this Article, shall also be entitled to receive compensation from the City of Omaha under any Workmen's Compensation Act or similar law, excluding awards for medical, hospital or burial expenses, where the same happening gives rise to both compensation and a pension, then the provisions of this Article are modified to the extent that such person shall not be entitled to *pension from the City of Omaha during the period such compensation is payable, unless the amount of the pension allowable, under the provisions of this Article, exceeds the amount of compensation, in which event such member or person shall receive the difference between the amount of said Workmen's*

> *Compensation award and the benefits he might otherwise receive under the provisions of this Act, as pension. . . .*

(Emphasis supplied.) In 1961, the ordinances governing the police and firemen's pension system were adopted, which essentially incorporated the above language into § 7.38.270.

After June 21, 1983, the ordinances governing the pension system were amended and, pursuant to § 22-89, provided in part:

> In the event that any member or person . . . eligible to receive a pension under this article, shall also be entitled to receive compensation from the city under any workmen's compensation act . . . the provisions of this article are modified to the extent that such person shall not be entitled to a *full* pension from the city during the period such *workmen's* compensation is payable. *When, pursuant to the provisions of this section, a member is receiving or qualifies to receive both a disability pension and workmen's compensation benefits, then the pension shall be reduced by the workmen's compensation benefit times the percentage amount of the city's contribution to this system, as established by a ratio between the city's contribution and the employee's contribution. The date upon which the disability pension is granted shall be utilized for determining the contribution rate between the city and the employee.*

(Emphasis supplied.) Based on a comparison of these provisions, the City argues that the 1983 ordinance is less disadvantageous to employees than prior law and cannot, therefore, be considered an impairment to an employee's original contractual rights.

The City relies on the 1957 home rule charter and further argues that pension rights do not vest until an occasion of disability and that, therefore, Warsocki's contractual right, if any, had not vested in 1983 when the challenged ordinance was enacted because he was not injured until January 28, 1984. Article VII-A, § 13, of the Omaha home rule charter provides as follows:

> Every member of the Departments shall pay a sum equal to three (3%) per cent of the base monthly salary

fixed and paid from time to time to members of the respective departments after the completion of the first two years of service thereon . . . and said money so paid and deducted shall be retained by the City of Omaha to become a part of the general revenues of the City and shall be prorated in accordance with the provisions of Section 4 of Article IV of the existing City Charter . . . and same shall represent that member's contribution to the City of Omaha in return for the pension benefits granted by this act. Such contribution shall not give rise to any vested rights on the part of such members by reason of said contribution, unless and until said member has completed all the requirements for a pension herein provided.

At trial, the court concluded that Warsocki's pension rights had not vested in 1983, that the City was free to modify its pension-related ordinances, and that Warsocki's contractual rights had not been impaired.

A review of the pension-related literature shows that earlier in this century pension benefits were treated as " 'a bounty springing from the graciousness and appreciation of sovereignty [which] may be given or withheld at the pleasure of a sovereign power.' " *City of Lincoln v. Steffensmeyer*, 134 Neb. 613, 620, 279 N.W. 272, 275 (1938). By at least 1964, the Nebraska Supreme Court had stated that benefits conferred pursuant to a pension plan were deferred compensation for services rendered, that the benefits were fixed when conferred, and that "[i]t is the payment thereof alone which is deferred to a later date." (Emphasis in original.) *Gossman v. State Employees Retirement System*, 177 Neb. 326, 331, 129 N.W.2d 97, 101 (1964).

Following these developments in which pension benefits were considered deferred compensation, the Nebraska Supreme Court in *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982), found that a change in calculating state patrolmen's pension annuities from those previously provided resulted in an unconstitutional impairment of patrolmen's contractual rights. The court observed that "[s]ince Nebraska law recognizes that public pensions are deferred compensation . . . it follows that

Nebraska public employees . . . have 'reasonable expectations which are protected by the law of contracts' with regard to their pension rights." *Id.* at 898, 320 N.W.2d at 914. See, also, *Omer v. Tagg*, 235 Neb. 527, 455 N.W.2d 815 (1990) (holding that promises regarding health insurance made at the time of employment involved deferred compensation and constituted a contract enforceable against the State). Cf. *Caruso v. City of Omaha*, 222 Neb. 257, 383 N.W.2d 41 (1986) (holding that if it was accepted that the city employees' retirement plan was deferred compensation and contractual in nature, the facts did not indicate that a change in the ordinances was disadvantageous to employees, and therefore, the court found no impairment of the contract).

In *Halpin*, the Nebraska Supreme Court recognized that not every modification of a contractual promise is an impermissible impairment. However, the court noted that where the employees' expectations concerning pension benefits are legitimately relied on in commencing or continuing employment, the pension benefits become part of a wage-and-fringe benefit package. The court held that a subsequent provision which violates those expectations will be found unenforceable unless the State demonstrates an " 'important public purpose' " or a " 'vital state interest' " requiring a change in benefits. *Halpin*, 211 Neb. at 902, 320 N.W.2d at 915. See, also, *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S. Ct. 1505, 52 L. Ed. 2d 92 (1977). It has also been stated that for an alteration in a benefit plan to be found reasonable, any change which results in a disadvantage to the employee should be accompanied by a comparable advantage for such employee. *Singer v. City of Topeka*, 227 Kan. 356, 607 P.2d 467 (1980).

The City argues that the Nebraska Supreme Court's finding in *Halpin* of enforceable deferred compensation is not applicable to the instant case because there was no nonvesting provision in the state statute involved in that case. The City argues that the court in *Halpin* continued to endorse its earlier decisions in *Mollner v. City of Omaha*, 169 Neb. 44, 98 N.W.2d 33 (1959), and *Lickert v. City of Omaha*, 144 Neb. 75, 12 N.W.2d 644 (1944), in which nonvesting provisions based on

city charters were enforced and prevented vesting of pension rights until retirement. We do not agree with the City's reading of *Halpin*.

In *Halpin*, the Nebraska Supreme Court specifically held that "public pensions are deferred compensation." 211 Neb. at 898, 320 N.W.2d at 914. In referring to public pensions, the court did not expressly limit its holding to Nebraska state employees, as opposed to city employees. Indeed, the court stated: "To the extent that *Lickert v. City of Omaha*, 144 Neb. 75, 12 N.W.2d 644 (1944), is in conflict, it is overruled." *Halpin*, 211 Neb. at 898, 320 N.W.2d at 914. The court commented elsewhere in *Halpin* that because the statute at issue in that case contained "no provision preventing vesting until a certain time, the decisions in *Mollner* and *Lickert* are not applicable." 211 Neb. at 900-01, 320 N.W.2d at 915. Based on the foregoing reading of *Halpin* and related cases, we conclude that Warsocki and the class before this court were the beneficiaries of deferred compensation which vested at employment.

The City contends that even if Warsocki had a vested pension benefit, § 22-89, passed in 1983, did not impair his contractual rights because its setoff provisions were more favorable to Warsocki than the previous ordinances. A 1980 ordinance, § 22-35, was the subject of considerable litigation, including *Novotny v. City of Omaha*, 207 Neb. 535, 299 N.W.2d 757 (1980). In *Novotny*, the Nebraska Supreme Court disapproved of § 22-35, which provided that disability payments were to be made in lieu of workers' compensation benefits. The court held in *Novotny* that workers' compensation benefits could not be reduced or affected by payments to an employee out of the City's disability pension fund. The court specifically found that payments out of the pension plan in lieu of workers' compensation benefits were in violation of then current workers' compensation statutes forbidding payment of workers' compensation benefits from funds to which employees have contributed. See Neb. Rev. Stat. §§ 48-130 and 48-147 (Reissue 1978).

The record shows that prior to the passage of § 22-89 in 1983, it was § 22-78, which contained language similar to that found objectionable in *Novotny*, that provided for a 100-percent

setoff from commingled funds. However, the employees still had no reasonable expectation based on the ordinances that they would receive undiminished pension benefits upon disability as deferred compensation because of the terms of the predecessor to § 22-89, which was § 7.38.270. Section 7.38.270 provided that if the employee was entitled to both workers' compensation and a disability pension, the entire amount of the workers' compensation benefit could be set off from the disability pension. As noted above, this complete setoff was modified by § 22-89 to recognize that the employee should still be entitled to his or her ratio of contribution to the disability pension, which had previously been included in that setoff. The passage of § 22-89 against this backdrop effected an improvement or increase in the amount of disability benefits which could be received concurrently with workers' compensation benefits, albeit this change was probably required in light of *Novotny*. Prior to the passage of § 22-89, the employees had no contractual or statutorily-based expectation of receiving any of those setoff benefits. The passage of § 22-89 was, therefore, not an impairment of the employee's contract. See *Caruso v. City of Omaha, supra.*

Based on the foregoing analysis and the record before us, we conclude that Warsocki failed to carry his burden of proving an impairment to the contract. In view of these conclusions, the judgment is affirmed.

AFFIRMED.