TOM CALABRO ET AL., APPELLEES, V. CITY OF OMAHA, A
MUNICIPAL CORPORATION, APPELLANT.

531 N.W.2d 541

Filed May 12, 1995. No. S-93-566.

Herbert M. Fitle, Omaha City Attorney, Kent N. Whinnery, and Wendy E. Hahn for appellant.

John P. Fahey and Robert W. Kortus, of Broom, Johnson, Fahey & Clarkson, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

Certain current and retired firefighters (the plaintiffs) filed this class action seeking a declaration of their rights under a supplemental cost–of–living benefit provided by the City of Omaha, which the city eliminated in 1989. The plaintiffs' claims raise two threshold issues: (1) Did the supplemental cost of living benefit constitute a pension? and, if so, (2) When did the plaintiffs' constitutionally protected contract right in the pension vest? The district court for Douglas County granted the plaintiffs' motion for summary judgment, holding that the city violated the federal constitutional rights of the represented class when it terminated the plaintiffs' supplemental cost–of–living benefit. We affirm because the supplemental benefit constituted a pension in which the plaintiffs obtained a vested, constitutionally protected contractual right when they accepted and commenced employment with the city.

## I. FACTUAL BACKGROUND

### 1. HOME RULE CHARTER

The Omaha Home Rule Charter of 1956 (Home Rule

Charter), § 6.09, granted the City of Omaha the power to enact a pension and retirement system. Section 6.09, in relevant part, stated:

> The Council shall have authority to establish a pension and retirement system or systems for any or all groups of officers and employes in the service of the city. Each pension and retirement system shall be financed on an actuarially funded basis, with the city and the employe making substantially equal contributions . . . . Moneys required for pension administration . . . shall be provided by appropriation from the general fund . . . . The provisions of pension ordinances shall require actuarial evaluations at least once every five years, which shall serve as the basis for the determination of contribution rates and shall also provide for the maintenance of adequate actuarial reserves. Officers and employes of the city, except elected officials shall become members of the system as a condition of employment. . . . Provisions for vesting may be included. The legal right to a pension or benefit for the members and beneficiaries entitled thereto shall become effective when such pensions or benefits become payable, and the same shall not be impaired, abrogated, or diminished thereafter.

Section 6.10 of the Home Rule Charter required that a board of trustees be created by city ordinance and that title to the trust would vest in that board.

## 2. 1961 PENSION PLAN

Pursuant to the above provisions in the Home Rule Charter, the City of Omaha established the Police and Firemen's Retirement System (1961 pension plan) on July 1, 1961. The 1961 pension plan included provisions for vesting based on either 20 or 25 years of service or disability. Additionally, the 1961 pension plan conformed with the requirements of the Home Rule Charter by providing for financing on an actuarial basis, funding based on equal contributions by the city and the employees, an actuarial evaluation at least every 5 years, funding from an independent trust fund, and the creation of a board of trustees.

### 3. Supplemental Benefit Plan

On August 21, 1973, the City of Omaha enacted a system of "Supplemental Retirement Benefits" (supplemental benefit plan). The supplemental benefit plan provided for the payment of cost-of-living supplemental benefits in recognition of the adverse effects that retirees and their dependents were experiencing due to high inflation. In order to receive the cost-of-living supplemental benefit, an employee had to be eligible to receive benefits under the provisions of the 1961 pension plan. The supplemental benefit plan called for an increase in pension payments equal to a rate representing the percentage increase in cost of living as reflected in the Consumer Price Index. The ordinance enacting the supplemental benefit plan provided that the cost of the supplemental benefits would be paid by the city and that neither the city employees' retirement system nor the city police and firefighters' retirement system would make any contributions to the supplemental benefit plan. The supplemental benefit plan was neither financed on an actuarial basis nor subject to periodic actuarial evaluations.

The city amended the ordinances that enacted the supplemental benefit plan on several occasions, placing caps on the yearly percentage increases that retirees could collect and establishing minimum and maximum monthly supplemental payments.

### 4. Elimination of Supplemental Benefit Plan

In May 1989, the city proposed an ordinance to eliminate payments from the supplemental benefit plan to those employees who retired after the effective date of the ordinance. The city printed in at least one newspaper a notice to the public describing the proposed ordinance and announcing the hearing date. The record reflects that the ordinance passed by a unanimous city council vote on June 6, 1989. The ordinance became effective on June 21, 1989, thus denying supplemental benefit payments to any firefighter who became eligible to collect pension payments after that date.

### 5. Lawsuit

The plaintiffs filed the instant civil rights class action lawsuit

under Neb. Rev. Stat. § 25-21,150 (Reissue 1989) and 42 U.S.C. § 1983 (1988), on February 12, 1990. The plaintiffs claimed to represent the interests of current employees of the city's fire division and members of the Police and Firemen's Retirement System; former employees of the city's fire division who retired after June 21, 1989; and the dependents of employees of the city's fire division who retired or died in the line of duty subsequent to June 21, 1989. The plaintiffs sought a declaration that by eliminating the supplemental benefit plan, the city violated the class' contractual rights under article I, § 10, of the U.S. Constitution; the Due Process Clause found in § 1 of the 14th Amendment to the U.S. Constitution and article I, § 3, of the Nebraska Constitution; and the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

The city demurred to the plaintiffs' petition, alleging that the district court lacked subject matter jurisdiction and that there was a material defect of parties. The district court overruled the city's demurrer. The plaintiffs then filed a motion for partial summary judgment, which the district court overruled.

Subsequent to the district court's decision overruling the plaintiffs' motion for partial summary judgment, the city filed a motion for summary judgment in its favor. In response, the plaintiffs filed a second motion for summary judgment in their favor. After an evidentiary hearing, wherein the district court received evidence substantially identical to that received at the hearing on the plaintiffs' first motion for summary judgment, the district court entered judgment in favor of the plaintiffs and denied the city's motion for summary judgment.

## II. ASSIGNMENTS OF ERROR

The city claims that the district court erred in (1) determining that the supplemental benefits were vested property or contract rights to be treated in the same fashion as the pension corpus and, in turn, determining that the plaintiffs' constitutional rights were violated; (2) failing to grant the city's motion for summary judgment; (3) finding that the plaintiffs had a property right protected by due process; (4) overruling the city's demurrer challenging the district court's subject matter jurisdiction; and

(5) failing to find that the plaintiffs failed to join necessary parties.

## III. STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Medley v. Davis, ante* p. 611, 529 N.W.2d 58 (1995); *Wiekhorst Bros. Excav. & Equip. v. Ludewig, ante* p. 547, 529 N.W.2d 33 (1995).

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Dalition v. Langemeier,* 246 Neb. 993, 524 N.W.2d 336 (1994); *First Nat. Bank in Morrill v. Union Ins. Co.,* 246 Neb. 636, 522 N.W.2d 168 (1994); *Gibb v. Citicorp Mortgage, Inc.,* 246 Neb. 355, 518 N.W.2d 910 (1994).

## IV. ANALYSIS

### 1. WHETHER SUPPLEMENTAL BENEFIT CONSTITUTED A PENSION

The primary issue raised in this appeal is whether the supplemental benefit plan constituted a pension in which the plaintiffs could and did obtain a constitutionally protected vested interest. The city contends that the supplemental benefit plan did not constitute a pension—instead, the city argues, the supplemental benefit plan was merely a gift or gratuity from the city to its employees. Without determining whether the city can provide a gratuity to its employees, we will analyze the city's arguments.

As support for its argument, the city attempts to draw an analogy to pension plans governed by the Employee Retirement

Income Security Act of 1974 (ERISA). The city argues that we should be persuaded to find that the supplemental benefit plan did not constitute a pension because such a plan is excluded from the definition of "pension" under ERISA. In particular, the city points to 29 C.F.R. § 2510.3-2 (1994), which reads in part:

(g) *Supplemental payment plans*—(1) *General rule.* Generally, an arrangement by which a payment is made by an employer to supplement retirement income is a pension plan. Supplemental payments made on or after September 29, 1980, shall be treated as being made under a welfare plan rather than a pension plan for purposes of title I of [ERISA] if all of the following conditions are met:

(i) Payment is made for the purpose of supplementing the pension benefits of · a participant or his or her beneficiary out of:

(A) The general assets of the employer . . .

. . . .

(ii) The amount payable under the supplemental payment plan to a participant or his or her beneficiary with respect to a month does not exceed the payee's supplemental payment factor . . . for that month . . . .

(iii) The payment is not made before the last day of the month with respect to which it is computed.

Retirement plans provided to government employees are exempt from compliance with ERISA, so ERISA has no binding effect on the case at bar. 29 U.S.C. § 1003(b)(1) (1988). Our research uncovered only one case interpreting § 2510.3-2(g), *United Steelworkers v. Newman-Crosby Steel*, 822 F. Supp. 862 (D.R.I. 1993), and that case is clearly distinguishable on its facts and is of little help in interpreting § 2510.3-2(g) as it might apply to the supplemental benefit plan instituted by the city. Likewise, we have not found any cases that analyze whether a cost-of-living supplement provided by a governmental employer constitutes a pension, though some courts appear to have assumed that such supplemental benefits constituted pensions. See, *United Firefighters v. Los Angeles*, 210 Cal. App. 3d 1095, 259 Cal. Rptr. 65 (1989), *cert. denied* 493 U.S. 1045, 110 S. Ct. 843, 107 L. Ed. 2d 837 (1990); *Nash v. Boise City Fire*

*Dept.*, 104 Idaho 803, 663 P.2d 1105 (1983).

We hold that the supplemental benefit plan in the case at bar constituted a pension. The city's supplemental benefit plan is directly related to the pension plan instituted under the authority of the Home Rule Charter, since in order to receive the supplemental benefit, the employee had to qualify for the 1961 pension plan. The 1961 pension plan constituted "deferred compensation" for services rendered—the benefits were fixed when conferred, and only the *payment* of those benefits was deferred to a later date. See *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982). Accord, *Omer v. Tagg*, 235 Neb. 527, 455 N.W.2d 815 (1990); *Gossman v. State Employees Retirement System*, 177 Neb. 326, 129 N.W.2d 97 (1964); *Warsocki v. City of Omaha*, 1 Neb. App. 874, 510 N.W.2d 446 (1993).

The city argues that the supplemental benefit was a gift to the firefighters paid for by the taxpayers through the city's general fund. However, if the city wanted to classify the supplemental benefit as a gift, it could have stated such in the ordinance enacting the supplemental benefit. Nothing in the enacting ordinance puts employees or potential employees on notice that the supplemental benefit could be taken away with the stroke of a pen. Employees contemplating employment with the city or current employees considering leaving public employment may well have been induced to commence or remain working for the city because they knew they were guaranteed a cost-of-living benefit package in addition to their straight pension benefits.

The city also contends that since the supplemental benefit plan did not comply with the requirements of § 6.09 of the Home Rule Charter, the cost-of-living benefit cannot be classified as a pension. We disagree. It is true that the supplemental benefit plan was not financed on an actuarial basis, funded by equal contributions from the city and the employees, subject to an actuarial evaluation every 5 years, or funded by an independent trust, as required by the Home Rule Charter. However, for the purposes of determining whether the city contractually obligated itself to maintaining the supplemental benefit plan, we are not limited by the language of the city's Home Rule Charter. We find that due to the lack

of information from which an employee could ascertain that the supplemental benefit plan was a mere gratuity from the city, the city treated the supplemental benefit plan like a pension. As noted above, if the city wanted to limit the scope of the supplemental benefit plan to that of a mere gratuity, it could have plainly stated so in the enacting ordinance. Instead, the city tied the supplemental benefit plan to the existing 1961 pension plan, indicating to its employees that the supplemental benefit plan was part and parcel of the 1961 pension plan. Thus, for the purposes of the plaintiffs' civil rights action, the supplemental benefit plan constituted a pension.

### 2. WHETHER THE PLAINTIFFS HAD A VESTED RIGHT IN THE SUPPLEMENTAL BENEFIT PLAN

#### (a) Applicable Nebraska Case Law

In *Lickert v. City of Omaha*, 144 Neb. 75, 12 N.W.2d 644 (1944), police officers employed by the City of Omaha sought a declaration of their rights under the city pension plan after the city amended the plan, raising the qualifying retirement age and length–of–service requirements. The trial court held that the police officers' rights in the pension vested upon acceptance of employment with the city. This court reversed the trial court's decision, holding that the mere acceptance of employment with the city did not establish a contract between the city and the police officers. This court stated that "[u]ntil the particular event happens upon which the pension is to be paid there is no vested right in the police officer to such payments." *Id.* at 84, 12 N.W.2d at 649. Therefore, until a police officer met the age and length–of–service requirements necessary to collect the pension benefits, that officer did not have a vested right in the pension. See, also, *Mollner v. City of Omaha*, 169 Neb. 44, 98 N.W.2d 33 (1959) (expressly reaffirming the rule announced in *Lickert*).

In *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982), this court overruled *Lickert* and expanded the time during which public employees' rights in their pension plans vested. We stated:

"For the civil service employees, the price of the pension plan, whether specifically discussed or not, is part of the

total wage package negotiated when salary raises are determined. Pensions are bargained as an integral part of the wage–and–fringe benefit calculus." [Citation omitted.] "[A]n employee who relies upon an offer of deferred benefits to his or her detriment, and to the benefit of the employer who gains the employee's valuable services and loyalty as a consequence thereof, has expectations which are protected by the law of contracts." [Citation omitted.] " 'State retirement systems create contracts between the state and its employees who are members of the system.' . . ." [Citation omitted.] Since Nebraska law recognizes that public pensions are deferred compensation . . . it follows that Nebraska public employees, no less than those in other states, have "reasonable expectations which are protected by the law of contracts" with regard to their pension rights. [Citation omitted.] To the extent that *Lickert* . . . is in conflict, it is overruled.

*Id.* at 898, 320 N.W.2d at 914.

In *Halpin*, this court held that public employees' rights in their pension plans vested prior to their becoming eligible to receive pension payments, based on the fact that other terms and conditions of employment, like salary, were directly affected by the pension plan in effect when the employee took the job. The *Halpin* court also differentiated the result in that case from cases where the language of the pension plan provided express requirements for vesting:

Two previous Nebraska cases [*Lickert* and *Mollner*] held that pension rights for public employees did not vest until "the particular event happens upon which the pension is to be paid . . . ." [Citations omitted.] . . . The no–vesting holdings in *Mollner* and *Lickert* were based on specific charter provisions which prevented vesting of pension rights until retirement. Because Neb. Rev. Stat. §§ 60–441 et seq. (Reissue 1978) contain no provision preventing vesting until a certain time, the decisions in *Mollner* and *Lickert* are not applicable.

*Id.* at 900–01, 320 N.W.2d at 915.

In the case at bar, the city contends that the quoted language from *Halpin* indicates that *Lickert* was overruled only to the

extent that the latter applied to pension plans containing no express vesting language. According to the city, when the pension plan contains language setting forth express requirements for vesting, *Lickert* remains good law in that the express language establishes vesting requirements which should be enforced. The city implicitly asks us to overrule *Warsocki v. City of Omaha*, 1 Neb. App. 874, 510 N.W.2d 446 (1993), a case cited by both parties, wherein the Nebraska Court of Appeals rejected the city's reading of *Halpin* as it relates to *Lickert*.

The plaintiff firefighter in *Warsocki* claimed that he had a vested interest in a disability pension offered by the city prior to his retirement. The city argued that the holding in *Halpin* was inapplicable in *Warsocki* because of the express vesting language contained in the city's pension plan. The city claimed that *Lickert* and *Mollner* were still good law because the *Halpin* court endorsed the holdings in the earlier cases in which nonvesting provisions based on city charters were enforced and prevented vesting of pension rights until retirement. The Court of Appeals disagreed with the city and held that Warsocki's interest in the pension vested at the time he began working for the city.

The city presents a similar argument in the case at bar. The city claims that *Lickert* and *Mollner* constitute an exception to the earlier vesting rule in *Halpin*. Specifically, the city claims that the express vesting language contained in its pension plan controlled the timing of the plaintiffs' vested rights in that pension.

The city's argument confuses the definition of "vest" as it is used in the city's Home Rule Charter and ordinances with the definition of "vest" when it is used to describe the creation of a legally protected interest. Ordinarily, and in the city's Home Rule Charter and ordinances, vesting " 'refers to a provision in a retirement plan whereby the member's right to a benefit becomes effective upon fulfillment of specified qualifying conditions, such as service for a certain period of time, which right is not forfeited by separation from service prior to the prescribed age for retirement.' " *Fund Manager v. City of Phoenix Police Dept.*, 151 Ariz. 487, 489, 728 P.2d 1237, 1239

(Ariz. App. 1986) (quoting *Kraus v. Bd. of Trustees*, 72 Ill. App. 3d 833, 390 N.E.2d 1281 (1979)). However, for the purposes of determining the creation of a legally protected right, "vest" is used in a legal, rather than ordinary, sense. " 'Vesting in a legal sense . . . refers to a contractual right to and interest in a pension that may be upheld at law.' " *Id.*

The vesting language in the city's Home Rule Charter and ordinances, which form the basis of the pension plan in question, clearly defines the specific qualifying conditions that must be satisfied before an employee acquires the right to begin receiving pension payments. That language, however, does not control when the plaintiffs' legally protected contractual right in the pension accrued. In *Halpin*, this court clearly determined that an employee's protected interest in a pension vested before he or she became eligible to collect the pension.

### (b) When Does Vesting Occur?

This court has not yet clearly stated when a public employee's rights in his or her pension vest for Contract Clause purposes, though in *Halpin*, we cited the California rule stated in *Miller v. State of California*, 18 Cal. 3d 808, 557 P.2d 970, 135 Cal. Rptr. 386 (1977), with approval. Accord, *Nash v. Boise City Fire Dept.*, 104 Idaho 803, 663 P.2d 1105 (1983); *Davis v. Annapolis*, 98 Md. App. 707, 635 A.2d 36 (1994); *Eagan v. Spellman*, 90 Wash. 2d 248, 581 P.2d 1038 (1978) (differentiating *Miller* on other grounds). The *Miller* court held that public employees' pension rights vest upon employment, but under certain circumstances the government may unilaterally modify them so long as the changes do not adversely alter the benefits or, if the benefits are adversely altered, they are replaced with comparable benefits. We now adopt the California rule as the rule in Nebraska and hold that a public employee's constitutionally protected right in his or her pension vests upon the acceptance and commencement of employment, subject to reasonable or equitable unilateral changes by the Legislature. Our holding is based primarily on policy grounds, in that we recognize that the availability of and security afforded by a pension plan may draw employees into government service. The cost-of-living adjustment provided by the supplemental benefit

plan in the case at bar is no different. Firefighters who accepted employment with the City of Omaha after the implementation of the supplemental benefit plan reasonably expected to receive the cost–of–living adjustment if they remained in public employment, and that expectation provided a powerful incentive to remain working for the city. Those employees who accepted employment after June 21, 1989, would have no such expectation and would not be entitled to the supplemental benefit plan.

### 3. CONTRACT CLAUSE ANALYSIS

The district court held that the city unconstitutionally deprived the plaintiffs and members of the class of their contractual rights in their pensions in violation of article I, § 10, clause 1, of the U.S. Constitution, which states, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." In order to determine whether the city unconstitutionally interfered with those contractual rights, we must engage in a three–part analysis. We must determine (1) whether there has been impairment of a contract; (2) whether the city's actions, in fact, operated as a *substantial* impairment of the contractual relationship; and, if so, (3) whether that impairment is nonetheless a permissible, legitimate exercise of the city's sovereign powers. See *Baltimore Tchrs. Un. v. Mayor, Etc., of Baltimore*, 6 F.3d 1012 (4th Cir. 1993), *cert. denied* ____ U.S. ____, 114 S. Ct. 1127, 127 L. Ed. 2d 435 (1994).

We have already held that the plaintiffs and the represented class obtained a contractual right in the supplemental benefit plan. The city clearly impaired that contract by eliminating the plan. Furthermore, we do not hesitate to find that by eliminating the plan, the city enacted a *substantial* impairment on the plaintiffs' contractual rights. See *United Firefighters v. Los Angeles*, 210 Cal. App. 3d 1095, 259 Cal. Rptr. 65 (1989), *cert. denied* 493 U.S. 1045, 110 S. Ct. 843, 107 L. Ed. 2d 837 (1990) (3–percent cap on cost–of–living adjustment held to be a substantial impairment). Thus, the only remaining question is whether the city exercised legitimate, permissible sovereign power in eliminating the supplemental benefit plan.

We hold that the city did not act in a legitimate, permissible

manner when it eliminated the plaintiffs' supplemental benefit plan. In order for the city's action to pass constitutional muster, it had to be both reasonable and necessary to serve an important public interest. See, *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S. Ct. 1505, 52 L. Ed. 2d 92 (1977); *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982). As we stated in *Halpin*:

> "[T]he application of the tests of necessity and reasonableness requires a much greater degree of judicial scrutiny in cases, such as this one, involving [state action] which purports to abrogate a state's own financial obligation than in cases involving an impairment by the state of purely private contracts." *Singer v. City of Topeka*, 227 Kan. 356, 607 P.2d 467 (1980), states the rule in this manner: " 'To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.' "

211 Neb. at 901, 320 N.W.2d at 915.

In the instant case, the city claims that it faced potential bankruptcy if the supplemental benefit plan remained in effect. The city contends that due to fiscal troubles, it could not continue the supplemental payments for an indefinite period. The city refers us to financial reports prepared by third–party financial consultants as evidence that "continued funding of the supplemental benefit would cause serious fiscal problems for the City." Reply brief for appellant at 6.

The fatal flaw in the city's "fiscal crisis" argument is that the financial reports upon which they base this argument do not recommend or even suggest that the city eliminate the supplemental benefit fund. The first report, prepared in 1987, suggested that the city work "to either pre–fund [the supplemental benefit plan] or discontinue the cost from the General Fund." The second report, prepared in 1988, recommended that "the City continue to evaluate its options for funding [the supplemental benefit plan], and that actuarially sound methods be utilized to properly quantify the present and

future obligations of this plan." The most consistent thread connecting the 1987 and 1988 financial reports is the suggestion that the city seek alternate funding for the supplemental benefit plan. Neither report mentions discontinuing the plan.

The inquiry into the "necessity" component of the test can be considered in two levels: (1) whether less drastic modification of contractual obligations would have been sufficient to accomplish the city's purposes and (2) whether, without modifying its obligations at all, the city could have adopted alternative means of achieving its goals. *Pineman v. Oechslin*, 494 F. Supp. 525 (D. Conn. 1980), *vacated on other grounds* 637 F.2d 601 (2d Cir. 1981) (citing *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S. Ct. 1505, 52 L. Ed. 2d 92 (1977)). The city has not convinced us that terminating the supplemental benefit plan was the only viable alternative for correcting its alleged fiscal woes.

Additionally, the record is devoid of evidence that the city conferred any benefit on the plaintiffs and the class in exchange for eliminating the supplemental benefit. "[A] municipality may make reasonable changes or modifications in pension plans in which employees hold vested contract rights, but changes which result in disadvantages to employees must be accompanied by offsetting or counterbalancing advantages." *Singer v. City of Topeka*, 227 Kan. 356, 367, 607 P.2d 467, 476 (1980). Accord *Halpin v. Nebraska State Patrolmen's Retirement System, supra.* See, also, *Miller v. State of California*, 18 Cal. 3d 808, 557 P.2d 970, 135 Cal. Rptr. 386 (1977); *Allen v. City of Long Beach*, 45 Cal. 2d 128, 287 P.2d 765 (1955); *Nash v. Boise City Fire Dept.*, 104 Idaho 803, 663 P.2d 1105 (1983); *Davis v. Annapolis*, 98 Md. App. 707, 635 A.2d 36 (1994); *Bakenhus v. City of Seattle*, 48 Wash. 2d 695, 296 P.2d 536 (1956). The plaintiffs in the instant case were clearly disadvantaged by the elimination of the supplemental benefit plan. The city offered no evidence of corresponding benefits to the plaintiffs that would offset the elimination of the supplemental benefit. Thus, the city's decision to eliminate the supplemental benefit plan constituted an unreasonable alteration of the plaintiffs' pension rights. See *Nash v. Boise City Fire Dept., supra.*

### 4. SUBJECT MATTER JURISDICTION

The city challenges the subject matter jurisdiction of the district court over the instant case on two grounds: (1) the alleged failure of the plaintiffs to submit their claim to the Commission of Industrial Relations (CIR) and (2) the alleged failure by the plaintiffs to file a notice of claim.

#### (a) Commission of Industrial Relations

The city claims that since pensions constitute a term or condition of employment, the CIR, not the district court, was the proper forum for the plaintiffs' civil rights action. See Neb. Rev. Stat. § 48–810 (Reissue 1993).

The CIR is not a court and is in fact an administrative body performing a legislative function. *Transport Workers of America v. Transit Auth. of City of Omaha*, 205 Neb. 26, 286 N.W.2d 102 (1979); *American Assn. of University Professors v. Board of Regents*, 198 Neb. 243, 253 N.W.2d 1 (1977). In *Transport Workers of America*, we stated:

> The CIR has no authority to grant either declaratory or equitable relief . . . .
>
> As a general rule administrative agencies have no general judicial powers, notwithstanding they may perform some quasi–judicial duties. Moreover, unless permitted by the Constitution, the Legislature may not authorize administrative officers or bodies to exercise powers which are essentially judicial in their nature, or to interfere with the exercise of such powers by the courts. [Citations omitted.] Likewise, the Constitution of the State of Nebraska firmly establishes that the judicial power in Nebraska is vested solely in the courts. Art. II, § 1, and Art. V, § 1, Constitution of Nebraska. As an administrative body the CIR may not exercise judicial functions.
>
>      . . . .
>
> The entering of a declaratory judgment . . . [is] clearly [a] judicial [function].

205 Neb. at 34, 286 N.W.2d at 107.

In the case at bar, the plaintiffs requested a declaration that the city acted in an unconstitutional manner when it unilaterally

eliminated the supplemental benefit plan. It is a settled principle of constitutional law that the construction and interpretation of the Constitution is a judicial function. *Jaksha v. State*, 241 Neb. 106, 486 N.W.2d 858 (1992); *Davis v. General Motors Acceptance Corp.*, 176 Neb. 865, 127 N.W.2d 907 (1964). The Nebraska Constitution prohibits one branch of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives. *Clemens v. Harvey, ante* p. 77, 525 N.W.2d 185 (1994). The CIR would have been constitutionally prohibited from taking jurisdiction over the instant case. Therefore, the city's argument that the plaintiffs should have brought this action in front of the CIR is without merit. ·

## (b) Notice of Claim

The city also contends that the plaintiffs' action should be dismissed for lack of jurisdiction because the plaintiffs failed to file a notice of claim as required by Neb. Rev. Stat. § 14–804 (Reissue 1991). It is uncontradicted that the plaintiffs did not file a notice of claim with the city. This court has held that § 14–804 applies to claims for pensions and that compliance with the statute is mandatory. *Schmitt v. City of Omaha*, 191 Neb. 608, 217 N.W.2d 86 (1974). However, we hold that the failure to file a notice of claim does not require dismissal of the plaintiffs' declaratory judgment actions under § 25–21,150 and 42 U.S.C. § 1983.

### (i) § 25–21,150

The issue before the court regarding the plaintiffs' § 25–21,150 action is whether a declaratory judgment action, wherein the plaintiffs do not seek immediate money damages, constitutes a "claim" for the purposes of § 14–804. We hold that it does not. Section 14–804 requires a plaintiff filing a "claim" against the city to verify that "the amount therein charged and claimed is due and unpaid." The plaintiffs did not claim that any amount of money was "due and unpaid" to them by the city. Rather, under § 25–21,150, the plaintiffs merely requested a determination of their rights under the supplemental benefit plan. Though the result of such a declaratory judgment action may be that the city will eventually have to pay money to the

plaintiffs, the action is not a claim for money damages. Rather, the action is for a declaration of rights under a city ordinance. The plaintiffs did not need to file a notice of claim under § 14–804 in order to obtain a judicial declaration of their rights.

### (ii) § 1983

The plaintiffs' failure to file a notice of claim under § 14–804 also cannot defeat the plaintiffs' § 1983 civil rights claim. *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988). The Supreme Court in *Felder* held that the Supremacy Clause of the U.S. Constitution preempted a Wisconsin notice of claim statute which closely resembled the Nebraska notice of claim statute at issue in the instant case. The Court held that the notice of claim statute was inapplicable to a § 1983 claim brought in state court because conditioning the right of recovery under § 1983 upon compliance with a rule designed to minimize governmental liability, which directed injured persons to seek redress in the first instance from the very target of the federal legislation, was inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law. The holding in *Felder* is broad enough to apply to the Nebraska statute. Therefore, the plaintiffs' failure to file a notice of claim with the city in the instant case did not divest the district court of jurisdiction over the plaintiffs' § 1983 claim.

### 5. FAILURE TO JOIN NECESSARY PARTIES

The city argues that the plaintiffs' amended petition should have been dismissed on the city's demurrer because the plaintiffs failed to name necessary parties to this action. Specifically, the city contends that the Police and Fire Pension Board of Trustees (board of trustees) should have been named as codefendant and that members of the Omaha police force, as well as four separate bargaining units—Police Union Local 101, Firefighters Union No. 385, police management, and fire management—should have been represented as members of the class of the plaintiffs.

### (a) Board of Trustees

We find no merit in the city's contention that the board of

trustees was a necessary party to this litigation because the board of trustees took part in forming or funding the supplemental benefit plan. The city council created the supplemental benefit, and the funds for the supplemental benefit were derived solely from city funds. The board of trustees took no part in managing the supplemental benefit, and the board of trustees will face no liability if we find for the plaintiffs. A necessary party is one who may be compelled to respond to the prayer of the plaintiff's petition, and where there is nothing such a one is called upon to do, or can be compelled to do as a duty, one is not a necessary party. *State ex rel. Stenberg v. Murphy, ante* p. 358, 527 N.W.2d 185 (1995). Clearly, the board of trustees is not a necessary party.

### (b) Police Officers and Bargaining Units

The city claims that the class represented by the plaintiffs in the instant case is incomplete because the four bargaining units identified above, which include the Omaha police officers, were necessary parties to the instant action. The city's argument is without merit.

An indispensable or necessary party to a suit is one who has an interest in the controversy to an extent that such party's absence from the proceedings prevents a court from making a final determination concerning the controversy without affecting such party's interest. *Larson v. Vyskocil,* 245 Neb. 917, 515 N.W.2d 660 (1994); *Hoiengs v. County of Adams,* 245 Neb. 877, 516 N.W.2d 223 (1994); *Concerned Citizens v. Department of Environ. Contr.,* 244 Neb. 152, 505 N.W.2d 654 (1993). The city admits that the four named bargaining units negotiated separately regarding pension benefits. The unions representing the bargaining units are free to bring their own actions with regard to the supplemental benefit plan. We can make a final determination in the case at bar without affecting their interest.

## V. CONCLUSION

The supplemental benefit plan constituted a pension rather than a mere gratuity for the purposes of the Contract Clause of the U.S. Constitution, and the plaintiffs' constitutionally protected rights in that pension vested when they accepted

employment with the city and became members in the plan. Since the city's elimination of the supplemental benefit was neither necessary nor a reasonable alteration of the plaintiffs' pension rights, the city violated the plaintiffs' and the class' rights under the Contract Clause of the U.S. Constitution, in violation of § 1983.

AFFIRMED.