*842 Opinión disidente emitida por la
Jueza Asociada Señora Pabón Charneco.

Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.

(1)

Ante la Opinión que antecede, no queda otra alternativa que disentir del resultado anunciado. A través de solo doce (12) páginas, una mayoría de este Tribunal se aferra a una aplicación equivocada de Domínguez Castro et al. v. E.L.A. I, 178 DPR 1 (2010), certiorari denegado, Dominguez Castro v. Puerto Rico, 131 S.Ct. 152 (2010). Con una escueta opinión per curiam —huérfana de autor específico— se le da una trastada final a miles de servidores públicos, utilizando una metodología adjudicativa que raya en la constitucionalización de un “sello de goma”. No puedo prestar mi voto a ese proceder, por lo que debo emitir estas breves expresiones.
I
De acuerdo con la doctrina de Domínguez Castro v. E.L.A. I, supra, los tribunales deben limitarse a analizar la razonabilidad de las medidas legislativas que tengan el efecto de menoscabar relaciones contractuales. Sin embargo, el producto final del ratio decidendi de la Opinión per curiam que hoy se emite nos invita a concluir que la Ley Núm. 3-2013 es razonable porque... porque el Gobierno lo dice. Soy de la opinión que ese no es el análisis constitucional que requiere Domínguez Castro v. E.L.A. I, *843 supra, y U.S. Trust Co. of New York v. New Jersey, 431 US 1 (1977).
Al igual que discute el hermano Juez Asociado Señor Rivera García en su opinión disidente, considero que para que el Estado cumpla con el estándar de razonabilidad al momento de alterar las pensiones de los empleados públicos, este debe proveer algún beneficio al empleado que aminore el impacto de los cambios negativos en la relación contractual. Por eso, ante la eminencia de los intereses involucrados, entiendo que para llevar a cabo el análisis de razonabilidad los tribunales deben utilizar el estándar siguiente:
To be sustained as reasonable, alterations of employees’ pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. (Enfasis suplido). Allen v. City of Long Beach, 287 P.2d 765, 767 (Cal. 1955).
Ese es el estándar que sabiamente han utilizado varios tribunales que han analizado legislaciones como la involucrada en los casos de autos. Véanse: Calabro v. City of Omaha, 531 N.W.2d 541 (1995); Singer v. City of Topeka, 607 P.2d 467 (Kan. 1980); Betts v. Board of Administration, 21 Cal.3d 859 (1978). Un proceder contrario convertiría la actuación del Estado en un mero ejercicio de poder deslegitimado. Lamento que este Tribunal avale tal utilización del poder.
Nótese que el estatuto que analizamos en Domínguez Castro v. E.L.A. I, supra, cumplía con ese estándar de razonabilidad. La Ley Núm. 7-2009 (3 LPRA sec. 8791 et seq.) compensaba el efecto negativo del menoscabo contractual por ser una medida temporera, que afectaba un número limitado de empleados públicos y que colocaba a disposición de los cesanteados una serie de ayudas *844 económicas que amortizaban el efecto patrimonial a estos. Ese proceder cumplía adecuadamente con el estándar de razonabilidad que propongo. Ello a diferencia de la Ley Núm. 3, supra, que contiene menoscabo tras menoscabo, con efectos presentes y futuros, en el patrimonio de los trabajadores. Por esta razón, y por lo profundamente discutido en las opiniones disidentes de los compañeros Jueces Asociados Señores Kolthoff Caraballo, Rivera García y Estrella Martínez, la Ley Núm. 3, supra, debería ser declarada inconstitucional.
II
Por otro lado, si bien es cierto que el crédito de Puerto Rico está en riesgo y se ha alegado que declarar inconstitucional la Ley Núm. 3, supra, causaría finalmente su degradación, este no es el Foro para pasar juicio sobre ello. Sencillamente, esa es una consideración exógena al Derecho que no debe guiar la decisión de los casos de autos. Si el principio de independencia judicial significa algo es que ese tipo de amenaza no puede empañar la labor constitucional de los tribunales en Puerto Rico.
Lamentablemente, con la Opinión que hoy se emite, el crédito que sí ha quedado degradado es el de la credibilidad del Estado como patrono. Con solo doce (12) páginas este Tribunal dio la bendición final para que en apenas unos cuantos días miles de puertorriqueños vean sus vidas alteradas ante el cambio inminente e ineludible de su futuro económico. En unos días tendrán que aportar más a un sistema de retiro que nuevamente se les ha prometido, pero con el conocimiento de que, tras años de labor incansable al servicio de su Isla, la pensión original a la cual eran acreedores sencillamente se esfumó. En doce (12) páginas de análisis judicial pasajero, se selló ese nuevo futuro de los empleados públicos en Puerto Rico. El sacrificio *845 de largos años de estos servidores públicos merecía mucho más que eso.
Finalmente, tres (3) miembros de este Tribunal que conforman la Mayoría en este caso han dado su anuencia a este lamentable proceder. Ello a pesar de haber disentido enérgicamente de lo resuelto en Domínguez Castro v. E.L.A. I, supra. Este es tan solo el segundo capítulo de una saga en la cual aparentemente presenciaremos una “virazón” en la metodología adjudicativa de estos tres (3) compañeros. Véase Alvarado Pacheco y otros v. ELA, 188 DPR 598 (2013). Parecería que ahora estamos ante un “nuevo” Tribunal Supremo. La inconsistencia de estos tres (3) compañeros en las últimas semanas “es evidente e irrefutable. Nada, que esta falta de constancia sólo se puede entender —tal vez— cuando, desde la orilla, observamos el flujo y reflujo de la marea”. Domínguez Castro v. E.L.A., supra, pág. 161, opinión disidente de la Juez Asociada Rodríguez Rodríguez.
III
Por todo lo anterior, declararía la Ley Núm. 3, supra, inconstitucional. Por ende, revocaría la sentencia emitida por el Tribunal de Primera Instancia.

 Home Bldg. & Loan Ass’n v. Blaisdell, 290 US 398, 425 (1934).